NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARCO A. DIGIOVANNI,** | Civil Action No. 15-3245 (ES) |
| Petitioner, | |
| v. | |
| | **OPINION** |
| **STEVEN JOHNSON, et al.,** | |
| Respondents. | |

**SALAS, DISTRICT JUDGE**

Petitioner, Marco A. DiGiovanni ("Petitioner"), a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (*See* D.E. No. 1, Petition ("Pet.")). For the reasons set forth below, the Petition is denied.[1]

### I.    BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[2] will recount salient portions of the recitation of facts as set forth by

---

[1]    To the extent that Petitioner's claims are unexhausted, the Court will deny them on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Carrascosa v. McGuire*, 520 F.3d 249, 255 n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2). . . . Denying an unexhausted claim on the merits is consistent with the statute."); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

[2]    "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

New Jersey Superior Court, Appellate Division:

> [O]n January 17, 1986, Patricia Della Pesca went to the apartment of her boyfriend, Mustacchio.  At approximately 3:30 a.m., the next day, the doorbell to Mustacchio's apartment rang.  Mustacchio asked, "Who is it?"  A man with a deep voice, identified at trial as Marco Anthony, responded, "Me."  Mustacchio replied, "I have someone with me."  Mustacchio then told Ms. Della Pesca to go into the bedroom and to take the tray of cocaine with her.  Although Mustacchio was using cocaine that night, Ms. Della Pesca testified that she did not ingest any of the drug.  Ms. Della Pesca went into the bedroom, closing the door behind her.  While hiding in the bedroom, Ms. Della Pesca heard fighting in the living room.  She then heard three gunshots coming from the living room.  Next, she heard Mustacchio say, Why are you doing this to me? I never did anything to you. Why are you doing this to me, Marco? I never did anything to you."  Mustacchio then yelled in a frightened voice, "Patty, Patty, call the police."  Ms. Della Pesca then heard a loud "thud," as if someone had fallen outside the bedroom door.  She grabbed a blanket and went into the closet to hide.  However, she was unable to close the closet door completely.  Fearing for her life, Ms. Della Pesca pulled the blanket over her head.  She heard someone open the bedroom door, slamming it against the wall.  She heard Marco Anthony tell Mustacchio to "Get down," and then heard several gun shots.  Silence followed.  Ms. Della Pesca stood up and opened the closet door approximately nine inches.  As she looked out of the closet, she saw Marco Anthony holding Mustacchio's limp body.  Blood covered Marco Anthony's coat and brain matter was splattered over the bed.  While Marco Anthony was holding Mustacchio's body, Marco Vincent [DiGiovanni] ran into the room holding a gun.  He jumped on the bed and, with a "sick grin" on his face, repeatedly shot Mustacchio.  Marco Vincent threw his gun on the floor next to Mustacchio's body and both Marco Anthony and Marco Vincent left the apartment.  Ms. Della Pesca looked at Mustacchio's body and noticed that he was still breathing.  However, he stopped breathing and Ms. Della Pesca called the police, but was unable to speak.

*State v. Digiovanni*, No. A-0938-12T2, 2014 WL 4675244, at *3-4 (N.J. Super. Ct. App. Div. Sept. 22, 2014).[3]

The complicated procedural history of Petitioner's criminal case is succinctly summarized by the New Jersey Superior Court, Appellate Division, during its review of Petitioner's second Petition for Post-Conviction Relief ("PCR"):

---

The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[3]      Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

> Defendant was tried and convicted by a jury of murder (count one), possession of a handgun without a permit (count two) and possession of weapons for an unlawful purpose (count three). Count three was merged into the murder conviction. Defendant was sentenced on December 5, 1986 to an extended term as a persistent offender, of life plus ten years subject to a thirty-year period of parole ineligibility on count one, with a consecutive term of ten years subject to a five-year period of parole ineligibility on count two.
>
> His conviction and sentence were affirmed on appeal and certification was denied. This court's unpublished opinion recited the factual circumstances surrounding the crime, defendant's arrest, his trial and sentence, which we incorporate by reference.
>
> Since then, defendant has filed numerous PCR petitions. The first was denied on December 20, 1991; that order was affirmed on appeal and certification was denied. Defendant's motion for a new trial based upon assertions of newly discovered evidence was denied. We affirmed the trial court's order and certification was denied. Defendant also pursued federal habeas corpus relief, which was denied.
>
> Defendant filed his next PCR petition and alternatively a motion seeking modification of an illegal sentence on September 9, 2009. Initially, the motion was denied as untimely, except for the sentencing challenge, based on the State's failure to prepare a presentence report. Counsel was appointed. When the State located the pre-sentence report, the judge also denied this motion. Defendant moved for reconsideration and the judge determined a hearing was necessary to consider defendant's contention that the pre-sentence report was never provided to him. Reconsideration of the remaining issues was denied.
>
> The resentencing hearing was held on March 29, 2012. A current pre-sentence report was prepared and provided to defendant. Corrections to the facts recorded in the pre-sentence report were identified. After merger, the judge granted the State's motion to impose an extended term sentence on the murder of sixty-five years with a thirty-year parole disqualifier. On the unlawful gun possession charge, defendant was sentenced to an extended term of eight years to be served consecutively, with a four year period of parole ineligibility. The revised JOC was filed on April 20, 2012. Defendant next moved to reduce his sentence, which was denied. A corrected JOC to properly record applicable jail credits was filed on October 12, 2012.

*Id.* at *1-2. The Appellate Division affirmed the denial of Petitioner's second PCR petition and the amended Judgment of Conviction and the New Jersey Supreme Court denied the petition for certification. *Id.; State v. Digiovanni*, 112 A.3d 591 (N.J. 2015).

3

On May 5, 2015, Petitioner filed the instant habeas Petition, alleging that "the Appellate Court's affirmation of the incomplete jury instruction and consecutive sentence was based on an unreasonable determination of fact as presented in the trial court proceedings." (Pet. ¶ 12(a)).

## II. LEGAL STANDARD

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"[Section] 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

4

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated a petitioner's federal claim on the merits. *See id.* § 2254(d).[4] If a claim has been adjudicated on the merits in state court proceedings, this Court may not issue a writ of habeas corpus "unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the

---

[4] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 563 U.S. at 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").

5

Supreme Court,' [and] [i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under § 2254(d)(1), however, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181-82.

### III.   DISCUSSION

#### A.  Double Jeopardy

First, Petitioner argues that the Appellate Division unreasonably determined the facts and applied the law when it affirmed Petitioner's consecutive sentences after the re-sentencing. (Pet. ¶ 12(a)). Initially in 1986, Petitioner received an extended-term sentence of life subject to 30 years

6

of parole ineligibility for the murder count and a consecutive ten-year sentence subject to five years of parole ineligibility for the firearm offense.  (D.E. No. 19-9 at 44-46).  On re-sentencing in 2012, this sentence was reduced to an extended-term sentence of 65 years of incarceration subject to 30 years of parole ineligibility for the murder count and a consecutive eight-year sentence subject to four years of parole ineligibility for the firearm offense.  (D.E. No. 7-17 at 38-40).  N.J.S.A. 2C:43-7a(6) states that the range for an extended-term sentence for murder is between 35 years and life.  Similarly, N.J.S.A. 2C:43-7a(4) sets the range for third-degree crimes (like unlawful possession of a firearm) at between five and ten years.  Thus, both Petitioner's original sentence and his new sentence are within the ranges set forth by the sentencing guidelines.  Nonetheless, Petitioner argues that the re-sentencing court's failure to merge Petitioner's unlawful possession conviction with his murder conviction, which resulted in consecutive sentences, violated the double jeopardy clause of the Fifth Amendment.  (*See* D.E. No. 4 at 8-11).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  Multiple punishments for the same offense at a single trial is forbidden by the Double Jeopardy Clause.  *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  To gauge when an imposition of consecutive sentences implicates the Double Jeopardy Clause, courts apply the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *See U.S. v. Chorin*, 322 F.3d 274, 281 (3d Cir. 2003).  *Blockburger* states that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  284 U.S. at 304.  The test can be satisfied even if there is "a substantial overlap in the proof offered to establish the crimes."  *Iannelli v. United States*, 420 U.S. 785, 775 n.17 (1975).

7

Here, Petitioner was convicted of two separate offenses: murder and unlawful possession of a firearm. These crimes are separated by statute—N.J.S.A. 2C:11-3 makes it a crime to purposely or knowingly cause a person's death, and N.J.S.A. 2C:39-5 prohibits the possession of a firearm without a permit. Additionally, the Appellate Division noted that "defendant's sentence on [unlawful possession] resulted from possession of a separate weapon found in his apartment, which was not the murder weapon." *DiGiovanni*, 2014 WL 4675244, at *4. Because the unlawful possession of the firearm occurred separate and apart from the murder, issuing Petitioner consecutive sentences on said convictions was proper. *See Chorin*, 322 F.3d at 281 ("[Petitioner] engaged in two criminal undertakings, rather than merely multiple steps in a single multi-step crime."). Indeed, the imposition of consecutive sentences is not an abuse of discretion "when separate crimes . . . occur at separate times." *DiGiovanni*, 2014 WL 4675244, at *3 (citing *State v. Copling*, 741 A.2d 624, 637 (N.J. Super. Ct. App. Div. 1999)); *see also U.S. v. Gibson*, 633 F.Supp. 1270, 1273 (D. Del. 1986) (holding that consecutive sentences were proper where defendant possessed separate firearms on different days at different locations).

Therefore, because there is no evidence of an unreasonable application of law or determination of the facts by the Appellate Division, and because Petitioner's consecutive sentences satisfy the *Blockburger* test, habeas relief on this ground is denied.

### B. Error in Jury Instruction

Petitioner also claims that his conviction for unlawful possession of a firearm must be vacated because there was an error in the jury charge. (Pet. ¶ 12(a)). Respondents concede that the "trial court's instruction on unlawful possession of a gun was wrong because it did not specify that the absence of a permit was an element of the crime." (D.E. No. 17 at 22). Respondents

8

argue, however, that this error was harmless and therefore habeas relief on this ground should be denied. (*Id*. at 22-29). The Court agrees.

The Appellate Division denied this claim as "meritless," while affirming the denial of Petitioner's second petition for PCR. *DiGiovanni*, 2014 WL 4675244, at *5. Though there was no attendant analysis in the Appellate Division's opinion, this denial is treated as one "on the merits" for purposes of federal habeas review. *See Harrington*, 562 U.S. at 100-02. Therefore, under AEDPA, the Appellate Division's denial is entitled to deference so long as "fairminded jurists could disagree" as to the correctness of the state court's decision. *Id*. at 101 (citing *Yarborough*, 541 U.S. at 664). Unless its decision was contrary to (or involved an unreasonable application of) federal law, or based on an unreasonable determination of the facts, the Appellate Division's denial of this claim must stand. *See* 28 U.S.C. § 2254(d)(1), (2).

The Supreme Court has held that an error in a jury instruction is a "trial error," not a "structural error," meaning that it is subject to a harmless error analysis. *California v. Roy*, 519 U.S. 2, 5 (1996). There, the Court specifically held that an "omission" on a jury charge was to be analyzed under the harmless error standard announced in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). *Id.* at 5-6. The harmless error standard asks "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 5. If, in a habeas proceeding, a court "is in grave doubt as to the harmlessness of an error," the petitioner must win. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) (applying the standard set forth in *Kotteakos*).

When evaluating a jury instruction, the instruction "must be considered in the context of the instructions as a whole and the trial record." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). Additionally, federal habeas precedent places an especially heavy burden on a defendant who seeks to show "error from a jury instruction that quotes a state statute." *Id*. at 190. Further,

9

an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977). Finally, the determination of whether a jury would have reached a different verdict but-for the omitted instruction cannot be based purely on speculation. *See id.* at 157.

Here, Petitioner argues (and Respondent concedes) that an error was made when instructing the jury on the charge of unlawful possession of a firearm. Specifically, the following instruction was issued at the trial:

> The pertinent part of the statute upon which this count is based reads: "Any person who knowingly has in his possession any handgun without first having obtained a permit to carry the same, as provided by law, is guilty of a crime." *There has been nothing in this case to suggest that the defendant obtained the necessary permit.* In order to convict the defendant of this charge, the state has a burden of proving beyond a reasonable doubt each of the following elements: 1) There was a handgun; 2) That the defendant possessed the same knowingly.

(D.E. No. 1-1 at 51-52) (quoting N.J.S.A. 2C:39-5). Though the trial judge did omit the element of the required permit at one point during the instruction, he did not omit this element from the entire instruction. The trial judge not only quoted the relevant state statute, but also addressed the issue of the permit during the jury charge. The sentencing court also considered the trial record and noted that "[t]he evidence was overwhelming" and that "no reasonable jury could have come, in your case, to any result but the one they announced to the court." (D.E. No. 17-14 at 32). Additionally, since this "omission escaped notice on the record until . . . the appellate level, the probability that it substantially affected the jury deliberations seems remote." *Kibbe*, 431 U.S. at 155. Lastly, Petitioner evinces no evidence that the omission at hand had any impact whatsoever on the jury's deliberations or its verdict, let alone a substantial and injurious one. Therefore,

because there is no evidence the Appellate Division's decision was either contrary to, or unreasonably applied, Supreme Court precedent, habeas relief on this ground is denied.[5]

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

### V. CONCLUSION

For the foregoing reasons, the Petition is denied and a certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[5] Because the Court denies habeas relief on the merits, it need not reach Respondents' arguments regarding exhaustion and procedural default. Additionally, because habeas relief is denied, Petitioner's motion for summary judgment on the Petition is hereby denied as moot. (D.E. No. 24).